ARMOUR & COMPANY *et al. vs.* THE NEW YORK, NEW HAVEN
& HARTFORD RAILROAD COMPANY *et al.*

JUNE 19, 1918.

PRESENT:   Parkhurst, C. J., Sweetland, Vincent, Baker, and Stearns, JJ.

*(1)   Construction of Statutes.*

In case of uncertainty in the construction of a statute the other provisions of the act may be referred to and even its title, if thereby aid is furnished in determining what was the intent of the legislature.

*(2)   Railroads.   Grade Crossings.*

Pub. Laws, R. I., cap. 896, "For the abolition of certain grade crossings in the cities of Pawtucket and Central Falls," approved April 29, 1912, provides in Section 1 that the grade crossings at certain streets "shall be eliminated and *altered.*"

At the time of the passage of the act the streets crossed a spur track and two through tracks at grade.

*Held*, that the word "altered" should not be interpreted in a way to permit the continued operation of any of the tracks at the same level as the highways, but that the intention of the legislature was to require the removal of all railroad tracks from the level of the streets.

*(3)   Railroads.   Grade Crossings.*

Under the authority conferred upon the commission appointed under provisions of Pub. Laws, cap 896, "for the abolition of grade crossings in the cities of Pawtucket and Central Falls," approved April 29, 1912, it was empowered to remove the right of way of a railroad from its former location to a new one a considerable distance away, although this change in location necessarily resulted in a discontinuance of the use of all tracks at its former location, including a spur track adjacent to the place of business of petitioner, thereby resulting in the inability of the carrier to furnish its service to the industries adjoining the track in exactly the same manner in which it had formerly been able to do.

*(4)   Railroads.   Grade Crossings.*

Where the service of freight delivery which a railroad had formerly performed by means of a spur track adjacent to petitioners' place of business, can be performed by the use of another track at the new location of the railroad, although less convenient to petitioner, it cannot be considered a discontinuance of service.

*(5)   Railroads.   Grade   Crossings.   Custom.   Constitutional   Law.   Taking Property.*

Merchants and industries which have benefitted from a custom followed by a railroad of furnishing spur track connections for the purpose of facilitating the movement of freight to and from their establishments adjoining the railroad's right of way, do not from that fact and the existence of such custom acquire a property right in such service; when the State requires the removal of the railroad location and thus severs the spur track, they therefore are not entitled to compensation.

*(6)   Constitutional   Law.   Taking Property.   Railroads.   Grade Crossings. Police Power.*

When the State in the exercise of its police power for the public safety removes a railroad location, providing more ample facilities elsewhere for the conduct of railroad business, the railroad company is not entitled to compensation for any loss arising out of such exercise of the police power, for when the company by authority of the State acquired its location and right to conduct its business there, it did so with full knowledge that the legislature at any time thereafter for the public safety might require said location to be abandoned for railroad purposes, and when such change is ordered there is no taking of property for public use for which compensation must be provided.

*(7)   Constitutional   Law.   Taking Property.   Railroads.   Grade Crossings. Police Power.*

Pub. Laws, R. I., cap. 896, "For the abolition of certain grade crossings in the cities of Pawtucket and Central Falls" approved April 29, 1912, provides

that the "Commission shall prescribe the manner and limits of the elimination and alteration of said grade crossings . . . and of the location of the railroads" and "shall specify . . . what, if any, changes shall be made" and "shall forthwith return its decision in triplicate accompanied by plats in duplicate showing the proposed layout." In the decision of the commission filed in the Superior Court, there was a provision for the elimination of the grade crossings at certain streets, but the commission recommended that a spur track be allowed to remain at grade. On the plat through tracks were shown in dotted lines marked to be removed. The spur track was shown in solid lines, and not so marked. Afterwards the Superior Court permitted the commission to amend its decision by striking out the recommendation as to the spur track, but the plat was not changed, and the decision so amended was confirmed.

*Held*, that upon the confirmation of the amended decision the°commission was authorized to eliminate the grade crossings, including the spur track, and in view of the travel of the matter as shown on the record the plat delineating the spur track in solid lines was not inconsistent with the amended decision.

BILL IN EQUITY. Heard on appeal from decree of Superior Court and decree affirmed.

SWEETLAND, J.   This is a suit in equity brought by the Providence and Worcester Railroad Company, Armour and Company, Swift and Company, and C. C. Hall against The New York, New Haven & Hartford Railroad Company, the members of the Pawtucket and Central Falls Grade Crossing Commission and the city of Pawtucket to enjoin the removal of a certain spur track in the city of Pawtucket which crosses Pine and Dexter streets at grade.

The complainants, in their second amended bill of complaint, in substance state among other things that The New York, New Haven & Hartford Railroad Company is the lessee and operator of the Boston and Providence Railroad and the Providence and Worcester Railroad; that the Providence and Worcester Railroad Company is the owner of an undivided half of the land on which the tracks operated by the respondent railroad company are laid; that adjacent to its main tracks said defendant railroad company operates the spur track in question; that adjoining said spur track is land occupied by the complainants Armour and Company, Swift and Company and C. C. Hall; that on the land so occupied by them the said complainants have fitted up warehouses and expended large sums of money, relying upon

the custom and agreement of the defendant railroad company, somewhat indefinitely stated in the bill, to furnish and maintain spur track facilities to merchants and the owners of industries who should locate along its tracks; that the respondents, the members of the Pawtucket and Central Falls Grade Crossing Commission derive their authority from Chapter 896 of the Public Laws, approved April 29, 1912, entitled "An Act Providing for the Abolition of Certain Grade Crossings in the Cities of Pawtucket and Central Falls;" that said commission has authorized and employed The New York, New Haven & Hartford Railroad Company to do the work contemplated by said act in accordance with a certain plat and decision of said commission approved by the Superior Court; that the respondents intend to enter upon said spur track and remove it and break the connection between said spur track and the main tracks of the respondent railroad company; that the respondents have made no plan to provide for spur track facilities in the future to replace those which they intend to destroy and if no substituted facilities are provided the action of the respondents will result in irreparable injury and loss to the complainants; wherefore the complainants ask that the respondents be restrained temporarily and permanently from removing or in any way interfering with said spur track or any part thereof. To the second amended bill of complaint the respondents severally demurred, and have respectively set out like grounds of demurrer. Said demurrers were heard before Mr. Justice Barrows in the Superior Court and were sustained upon the third and fourth grounds of demurrer. The third and fourth grounds are as follows:

"3. By the laws of the State of Rhode Island these defendants constitute the Pawtucket & Central Falls Grade Crossing Commission, and in that capacity are under obligation to remove certain grade crossings in the amended bill mentioned and to remove the grade crossing caused by the maintenance of the spur track in said bill of complaint mentioned.

"4.   That said defendants, as the Pawtucket & Central Falls Grade Crossing Commission as aforesaid, are under obligation to remove so much of the spur track in said amended bill of complaint mentioned, as crosses at grade the highways in the City of Pawtucket known as Pine Street and Dexter Street."   A decree was entered in the Superior Court dismissing said second amended bill and the cause is before us upon the complainants' appeal from said decree.

The complainants contend that Chapter 896 of the Public Laws neither requires nor empowers the Grade Crossing Commission to eliminate the spur track in question and further if the act does empower the elimination of said spur track it is unconstitutional.

Said Chapter 896 in our opinion, as its title indicates, was an act in the interest of public safety for the purpose of abolishing grade crossings on Pine, Dexter and Broad streets in the city of Pawtucket.   The complainants in their argument have laid considerable stress upon the following language in the first section of the act, "In order that the safety of the public may be assured the grade crossings at Pine street, Dexter street and Broad street, in the city of Pawtucket . . . shall be eliminated and altered."   The complainants urge that from this language the intent of the General Assembly appears that the commission created by the act should either eliminate or alter the grade crossings on the designated streets in a manner reasonably to secure the safety of the public.   At the time of the passage of the act Pine street and Dexter street each crossed said spur track and two through tracks of the defendant railroad at grade.   The complainants in the course of their argument appear to consider the crossing of each of said tracks by Pine and Dexter streets respectively as constituting a separate grade crossing, i. e., that on Pine street there were three grade crossings and on Dexter street there were also three grade crossings.   The complainants urge that while the safety of the public might require that the grade crossings at the through tracks on Pine and Dexter streets

should be eliminated, the grade crossings at the spur track on those streets might well be allowed to remain because of the more infrequent use of said track; and that the grade crossings at said spur track might be "altered" by some change in the manner of its use. In our opinion the construction thus given to the act, in the particulars referred to, is not warranted. A grade crossing in the ordinary sense, and as that expression is used in the act, refers to the crossing of a railroad location by a highway on the level of the railroad, whatever be the number of tracks laid upon the railroad roadbed at the point of crossing. On Dexter street and on Pine street respectively there was but one grade crossing. If the word "altered" in the first section of the act is used in the sense of a change in a grade crossing without its destruction then the expression "eliminate and alter" is ambiguous; for it would be impossible for the commission to both eliminate the grade crossing on either of the designated streets and also to change it without destroying its identity. In this uncertainty we may look to the other provisions of the act and even to its title, if thereby aid is furnished in determining what was the intent of the legislature. From the title of the act it appears that the General Assembly intended to provide for the abolition of grade crossings in Pawtucket on the streets named. The act also declares that said grade crossings are to be "eliminated and altered" in order that the safety of the public may be "assured," i. e., made certain and put beyond doubt. While it may be true that in the operation of said railroad its use of the through tracks at grade has more elements of danger and is a greater menace to the safety of the public than attends the use of said spur track at grade, nevertheless the operation of any steam railroad track across a city street on the same level is by no means free from peril; and the safety of the public cannot be said to be "assured" when such a situation exists.

From an examination of the various provisions of the act we are of the opinion that the word "altered" in the first

section should not be interpreted in a way to permit the (2) continued operation of any of the tracks of said respondent railroad, either on Pine or Dexter streets, at the same level as the highway; and that the intention of the General Assembly was, as the title of the act indicates, to require the removal of all railroad tracks from the level of Dexter and Pine streets.

The complainants further contend that the commission is not empowered to remove said spur track. A consideration of this point seems hardly necessary in view of our determination that the act contemplated the elimination of all grade crossings; that said spur track is a part of the grade crossings in Pine and Dexter streets; and that breaks in said spur track at those points would result in a discontinuance of the operation of said track. The complainants, however, appear to urge that whatever may be the intent of the act it fails to confer sufficient power upon the commission to enable it to remove said track. For the purpose of carrying out the provisions of the act very broad powers have been given to the commission. It is provided that "said commission shall prescribe the manner and limits . . . of the location of the railroads," and "shall specify . . . what changes shall be made in the manner in which the tracks of the railroad corporation shall be carried through said cities . . . and what, if any, changes shall be made in the location of the right of way and in the grades and alignments of the tracks of said railroad corporations." These provisions in our opinion gave to said commission ample authority (3) thority for their action in removing the right of way of the respondent railroad from its former location to a new location a considerable distance to the north. This change in location necessarily resulted in a discontinuance of the use of all the tracks at the former location. On this point the complainants insist that the respondents in their argument and that Mr. Justice Barrows in his rescript have unwarrantably enlarged the power of the commission to eliminate grade crossings into a power to eliminate tracks; and hence to

eliminate the service furnished by such tracks. The aboli-
tion of the grade crossings at Pine and Dexter streets of
necessity resulted in the removal of the spur track at those
points. A discontinuance of the use of that track and a
removal of the railroad's right of way to another location
resulted in the inability of the respondent railroad company
to furnish its service as a carrier of freight to the industries
and merchants whose establishments adjoined said track in
exactly the manner in which it had formerly been able to do.
The complainants correctly state that there is nothing in the
act which shows an intent on the part of the General Assem-
bly to destroy any of the powers or the ability of the re-
spondent railroad company to serve the people of Pawtucket
as a common carrier. To effectually carry out the purpose
of the act in question great changes were required to be
made in the location of the tracks, freight yards and passen-
ger depots of the respondent railroad, and in the manner in
which its freight and passenger service is to be performed.
These changes must inevitably result in inconveniences and
perhaps hardship to some individuals. It cannot be ex-
pected that such rearrangements in the interest of public
safety can be made and that all former conveniences and
special advantages to individuals shall still remain un-
disturbed. The spur track in question was but part of the
equipment of the railroad used by it for the delivery of
freight, which it had brought to Pawtucket as a common
(4) carrier. This service of freight delivery which the respond-
ent railroad has formerly performed by means of said spur
track at the place where it is now located can be performed
by the use of another track at the new location of said rail-
road; and there cannot fairly be said to be a discontinuance
of that service; although it is obvious that the change in
location will deprive the complainants, other than the
Providence and Worcester Railroad Company, of the con-
veniences and advantages of position which they now enjoy.

It is the contention of the complainants that if said act
empowers the commission to eliminate said spur track it is

unconstitutional; for such elimination would amount to a taking of private property for public use without compensation.   So far as the complainants Armour and Company, Swift and Company and C. C. Hall are concerned, the property which has been taken, according to the complainants' claim, is the right arising to these complainants under the custom and agreement stated in the bill of complaint, viz.: "an unvaried and uniform custom and agreement of said defendant, The New York, New Haven and Hartford Railroad Company and its lessors to furnish trackage and to maintain spur track facilities to all such industries as should locate along or near their main track." There is no allegation in the bill of a definite contract entered into by the complainants with the respondent railroad company; and the indefinite "custom and agreement" stated amounts to nothing more than a statement of the existence of a custom generally followed by all railroad companies of furnishing spur track connections for the purpose of facilitating the movement of freight to and from establishments which adjoin the railroad's right of way. The merchants and industries, which thus enjoy the accommodation furnished by spur track connections, do not from that fact and the existence of such custom acquire a property right in such service.   When, as in this case, the State required the removal of the railroad location and thus severed the spur track connections the abutting proprietors may suffer inconvenience and loss, but not the loss of a property right for which they are entitled to compensation. As to the complainant, The Providence and Worcester Railroad Company, the complainants assert that the removal of the spur track as contemplated by the commission would deprive said complainant railroad company of the track, would depreciate the value of the land over which it is laid, in which said complainant has an undivided half interest, would conceivably make said complainant liable to the other complainants, and would, whenever the lessee railroad's lease terminates, deprive said complainant of a lucrative

(6) source of revenue by taking away its right to continue the service of the track to the other complainants. The complainants submit that any attempt on the part of the legislature to empower the commission to cause such results without providing for the payment of adequate compensation would be a flagrant violation of the property rights of the complainant, The Providence and Worcester Railroad Company. There is nothing before us to warrant the claim that the land over which the spur track is laid would materially depreciate in value if said spur track is removed, nor does it appear from the allegations of the bill that the removal of said spur track would render The Providence and Worcester Railroad Company liable to the other complainants; nor does it appear that the delivery of freight directly from the railroad cars into the establishment of the other complainants furnishes a more "lucrative source of income" to the Railroad Company than the delivery of such freight at some other place. But if all of those claims of the complainant were supported the removal of the spur track would not amount to the taking of property of The Providence and Worcester Railroad Company for which it would be entitled to receive compensation.

In support of their claim the complainants have cited a number of cases in which it has been held that when a street has been laid out across a railroad's right of way, or across land used by it for railroad purposes and a portion of said land has been taken the railroad was entitled to compensation. *Missouri Pacific* v. *Cass County,* 76 Neb. 396; *Chicago & Northwestern Ry. Co.* v. *Cicero,* 154 Ill. 656; *Chicago &c.* v. *Naperville,* 166 Ill. 87; *Grand Rapids* v. *Grand Rapids,* 66 Mich. 42. These were all cases showing the exercise of the power of eminent domain. Such cases are to be distinguished from the one before us. Here the State in the exercise of its police power, for the public safety, has removed the railroad location and has provided elsewhere more ample facilities for the conduct of railroad business. For any loss arising out of this exercise of the police power of the State

the complainant railroad company is not entitled to compensation.   When the Providence and Worcester Railroad Company, by authority of the State, acquired its railroad location and its right to conduct its business at that place, it did so with full knowledge that at any time thereafter the General Assembly, for the public safety and welfare, might require said location to be abandoned for railroad purposes. If such change is ordered, the law is that there has been no taking of property for public use, for which compensation must be provided.   *Commonwealth* v. *Tewksbury*, 11 Met. 55; *American Rapid Telegraph Co.* v. *Hess*, 125 N. Y. 641; *Jamieson* v. *Indiana &c. Co.* 128 Ind. 555; *Odd Fellows Cemetery* v. *San Francisco*, 140 Cal. 226.

The complainants contend that irrespective of the Commission's power, it is not authorized by the plat and amended decision, as confirmed in the proceedings in the Superior Court, marked Equity No. 2070, to eliminate the spur track. The act provides that the "Commission shall prescribe the manner and limits of the elimination and alteration of said grade crossings . . . and of the location of the railroads" and "shall specify . . . what if any changes shall be made" and "shall forthwith return its decision in triplicate, accompanied by plats in duplicate, showing the proposed layout . . ." It is claimed by the complainants that in making changes the Commission is confined to those changes which are definitely specified in its plat and decision as confirmed.   In the decision of the commission, filed in the Superior Court, in accordance with the requirements of said act, there was a provision for the elimination of the grade crossings at Pine and Dexter streets.   Without more, as we have pointed out above, this would have provided for the removal of the spur track at each of these crossings.   The commission did however report that the owners, occupants and operators of industries adjoining said spur track had urgently requested the commission to permit said spur track to remain at its present location and grade; that the commission was doubtful of its power; but if in the opinion of the court it was within the jurisdiction of the

commission so to do it recommended that this side or spur track be allowed to remain at its present location and grade. The commission further reported that the side track was shown on the accompanying plat as said track then existed. On the plat accompanying the decision the two through tracks crossing Pine and Dexter streets were shown in dotted lines and were marked "dotted tracks to be removed." The spur track was shown in solid lines. Afterwards the Superior Court, upon motion of said commission, permitted the amendment of the decision "by striking out the recommendation that the present side track between Pine street and Broad street in the city of Pawtucket be allowed to remain in its present location and at its present grade." No change was made in the plat which accompanied the decision. The decision as amended was afterwards confirmed by the Superior Court. In these circumstances the complainants urge that the commission is not authorized by the plat and the decision as confirmed to eliminate the spur track, because in said decision it is not specifically provided that said spur track is to be removed at the grade crossings on Pine and Dexter streets, and because it is not shown upon said plat that said spur track is to be removed. In our opinion this claim is entirely without force. Upon the confirmation of the amended decision the commission was authorized to eliminate the grade crossings on Pine and Dexter streets, including the spur track in question; and in view of the travel of the matter, clearly shown on the record in the Superior Court, the plat delineating the spur track in solid lines is not inconsistent with the amended decision.

We find no merit in any of the complainants' reasons of appeal. The decree of the Superior Court sustaining the demurrers to the second amended bill of complaint and dismissing said second amended bill of complaint is affirmed; the cause is remanded to the Superior Court for further proceedings.

*Edwards & Angell, Champlin & Harris,* for complainants.
*Mumford, Huddy & Emerson, Charles C. Mumford,* for respondents.